IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


**TERRY B. JOHNSON,**

     **Plaintiff,**

**vs.**                                                    **Case No.  4:13cv560-WS/CAS**

**CAROLYN W. COLVIN,**
**Acting Commissioner of the Social**
**Security Administration,**

     **Defendant.**

_____/


## REPORT AND RECOMMENDATION

     This is a Social Security case referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.2(D).  It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Acting Commissioner (Commissioner) of the Social Security Administration (SSA) denying Plaintiff's application for a period of disability and Disability Insurance Benefits (DIB) filed pursuant to Title II of the Social Security Act (Act).  After consideration of the record, it is recommended that the decision of the Commissioner be affirmed.

**I.  Procedural History**

     On August 2, 2010, Plaintiff, Terry B. Johnson, filed an application for DIB alleging disability beginning January 1, 2010, complaining of diabetes, hypertension, high blood pressure, right foot problem, prior heart attacks, and back problems.  R. 17,

125-31, 147, 152.  (Citations to the Record shall be by the symbol ("R") followed by a page number that appears in the lower right corner.)  Plaintiff's date last insured for DIB is December 31, 2013.  R. 17.

Plaintiff's application was denied initially on January 18, 2011, and upon reconsideration on March 23, 2011.  R. 17, 61, 70, 72, 79.  On April 7, 2011, Plaintiff requested a hearing.  R. 17.  On May 8, 2012, Administrative Law Judge (ALJ) Jeffrey Marvel held a hearing in Tallahassee, Florida.  R. 17, 28-49.  The ALJ stated that Plaintiff had been represented at one time by an attorney, but that Plaintiff's attorney withdrew from representation in February 2012.  R. 31, 75-76.  Plaintiff advised that he had not sought additional representation and had been incarcerated since July 14, 2012, for violation of probation, but expected to be released in October 2012.  R. 31, 111.  Plaintiff testified by telephone.  R. 30.[1]  John B. Black, Ed. D., an impartial vocational expert, testified during the hearing.  R. 17, 43-47, 113-17 (Resume).  Toward the end of the hearing, the ALJ asked Plaintiff if he had anything additional to say and Plaintiff responded that he did not "understand none of it all, and I, I think you explained it to the best, but it's just not registering."  R. 47.  The ALJ explained that it is "a complicated process," that Plaintiff once had an attorney, but withdrew, and that Plaintiff proceeded "without any representation and going on the record that it exists now."  *Id.* The ALJ further advised that he would review the record and determine if there was a need to request additional records from the Department of Corrections (DOC) in

---

[1]  On May 2, 2012, Plaintiff wrote a letter to the Office of Disability Adjudication requesting a postponement of his upcoming hearing scheduled for May 8, 2012. R. 124.  On May 3, 2012, Plaintiff singed a waiver of his right to an in-person hearing, advised of his unavailability for an in-person hearing, and elected to proceed by a telephone hearing.  R. 120.

Gainesville, Florida, where Plaintiff was treated for one day a week for five and one-half years.  R. 47-48.

On June 7, 2012, the ALJ issued a decision and denied Plaintiff's application for benefits concluding that Plaintiff was not disabled from June 1, 2009, through the date of the ALJ's decision.  R. 68-69.  On July 14, 2012, Plaintiff requested review of the ALJ's decision and included a statement of facts.  R. 50-60, 227-31.  On August 14, 2013, the Appeals Council considered Plaintiff's request, including additional evidence (Exhibit 16E (Plaintiff's June 7, 2010, letter and statement of facts);[2] Exhibit 11F (medical records from DOC dated September 28, 2011, through January 10, 2012; and Exhibit 12F (a list of Plaintiff's medications dated October 29, 2011, through July 22, 2012).  R. 1-6.  The Appeals Council denied Plaintiff's request for review of the ALJ's decision making the ALJ's decision the final decision of the Commissioner.  R. 1-6; *see* 20 C.F.R. § 404.981.

On October 9, 2013, Plaintiff, by counsel, R. 7-9, 13, filed a Complaint with the United States District Court seeking review of the ALJ's decision.  Doc. 1.  The parties filed memoranda of law, docs. 18 and 19, which have been considered.

## II.  Findings of the ALJ

The ALJ made several findings relative to the issues raised in this appeal:

1. "The claimant meets the insured status requirements of the Social Security Act through December 31, 2013."  R. 19.

2. "The claimant has not engaged in substantial gainful activity since January 1, 2010, the alleged onset date."  *Id.*

3. "The claimant has the following severe impairments: degenerative disk disease of the lumbar spine and diabetes mellitus."  *Id.*

---

[2]  This exhibit is mis-labeled as Exhibit 9E rather than Exhibit 16E.  R. 4-5, 50-60, 227-31 (Exhibit 16E).

4. "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." R. 20.  The ALJ stated he gave "particular consideration to the claimant's impairments under each of the Listing of Impairments" and specifically referred to the sections dealing with the musculoskeletal and endocrine systems.  *Id.*  The ALJ further stated that "the medical evidence of record does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairments, individually or in combination."  *Id.*

5. "[T]he claimant has the residual functional capacity [RFC] to perform light work as defined in 20 CFR 404.1567(b) except that he could occasionally lift 20 lbs. and frequently lift 10 lbs[.]; could stand and walk for 6 hours in an 8-hour day; could sit for 6 hours in an 8-hour day; could frequently balance, stoop, kneel, crouch, crawl and climb ramps and stairs (but never climb ladders, ropes or scaffolds); and should avoid concentrated exposure to hazards such as heights."  R. 20.

6. "The claimant is capable of performing past relevant work as an automatic packer.  This work does not require the performance of work-related activities precluded by the claimant's [RFC]."  R. 22.  The vocational expert testified, and the ALJ agreed, that Plaintiff would be able to return to this job.  *Id.*; *see* R. 45-46.[3]

7. "The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2010, through the date of" the ALJ's decision. R. 22.

## III.  Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by

substantial evidence in the record and premised upon correct legal principles.

---

[3]  The vocational expert described this job as a light job with a SVP of 2, which is unskilled.  R. 22, 44-45.  "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 404.1568(a).  An SVP of 1 means a "[s]hort demonstration only."  <u>Dictionary of Occupational Titles</u> (DOT) (4th Ed., Rev. 1991), Appendix C: Components of the Definition Trailer, § II, SVP.  An SVP of 2 means "[a]nything beyond short demonstration up to and including 1 month."  *Id.*  In part, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).

42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial

evidence is more than a scintilla, but less than a preponderance.  It is such relevant

evidence as a reasonable person would accept as adequate to support a conclusion."

Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord

Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual

findings are conclusive if supported by substantial evidence."  Wilson v. Barnhart, 284

F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).  The court may not reweigh the

evidence or substitute its own judgment for that of the ALJ even if it finds that the

evidence preponderates against the ALJ's decision.  Moore, 405 F.3d at 1211.[4]

   "In making an initial determination of disability, the examiner must consider four

factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining

physicians; (3) subjective evidence of pain and disability as testified to by the claimant

and corroborated by [other observers, including family members], and (4) the claimant's

age, education, and work history.'"  Bloodsworth, 703 F.2d at 1240 (citations omitted).

   A disability is defined as a physical or mental impairment of such severity that the

claimant is not only unable to do past relevant work, "but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work

---

   [4]  "If the Commissioner's decision is supported by substantial evidence we must
affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232,
1240, n.8 (11th Cir. 2004) (citations omitted).  "A 'substantial evidence' standard,
however, does not permit a court to uphold the Secretary's decision by referring only to
those parts of the record which support the ALJ.  A reviewing court must view the entire
record and take account of evidence in the record which detracts from the evidence
relied on by the ALJ."  Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).
"Unless the Secretary has analyzed all evidence and has sufficiently explained the
weight he has given to obviously probative exhibits, to say that his decision is supported
by substantial evidence approaches an abdication of the court's 'duty to scrutinize the
record as a whole to determine whether the conclusions reached are rational.'"  Cowart
v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  A disability is an

"inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12

months."  42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509 (duration requirement).

Both the "impairment" and the "inability" must be expected to last not less than 12

months.  Barnhart v. Walton, 535 U.S. 212 (2002).  In addition, an individual is entitled

to DIB if she is under a disability prior to the expiration of her insured status.  *See* 42

U.S.C. § 423(a)(1)(A); Moore v. Barnhart, 405 F.3d at 1211; Torres v. Sec'y of Health &

Human Servs., 845 F.2d 1136, 1137-38 (1st Cir. 1988); Cruz Rivera v. Sec'y of Health

& Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

  The Commissioner analyzes a claim in five steps.  20 C.F.R. § 404.1520(a)(4)(i)-

(v).

   1. Is the individual currently engaged in substantial gainful activity?

   2. Does the individual have any severe impairments?

   3. Does the individual have any severe impairments that meet or
equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

   4. Does the individual have the RFC to perform work despite
limitations and are there any impairments which prevent past relevant
work?[5]

   5. Do the individual's impairments prevent other work?

---

 [5]  A residual functional capacity (RFC) is the most a claimant can still do despite
limitations.  20 C.F.R. § 404.1545(a)(1).  It is an assessment based upon all of the
relevant evidence including the claimant's description of her limitations, observations by
treating and examining physicians or other persons, and medical records.  *Id.*  The
responsibility for determining claimant's RFC lies with the ALJ.  20 C.F.R.
§ 404.1546(c).

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work. If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled.  If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience.  Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g).  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

As the finder of fact, the ALJ is charged with the duty to evaluate all of the medical opinions of the record resolving conflicts that might appear.  20 C.F.R. § 404.1527.  When considering medical opinions, the following factors apply for determining the weight to give to any medical opinion: (1) the frequency of examination and the length, nature, extent of the treatment relationship; (2) the evidence in support of the opinion, i.e., "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight" that opinion is given; (3) the opinion's consistency with the record as a whole; (4) whether

the opinion is from a specialist and, if it is, it will be accorded greater weight; and (5) other relevant but unspecified factors.  20 C.F.R. § 404.1527(b) & (c).

The opinion of the claimant's treating physician must be accorded considerable weight by the Commissioner unless good cause is shown to the contrary.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  This is so because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."  20 C.F.R. § 404.1527(c)(2).  "This requires a relationship of both duration and frequency."  Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).  "'The treating physician doctrine is based on the assumption that a medical professional *who has dealt with a claimant and his maladies over a long period of time* will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records.'  *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (emphasis added)."  *Id.*

> As the Supreme Court recently observed, "the assumption that the opinions of a treating physician warrant greater credit that [sic] the opinions of [other experts] may make scant sense when, for example, the relationship between the claimant and the treating physician has been of short duration."  *Black & Decker Disability Plan v. Nord*, [538 U.S. 822, 832 (2003)].  Moreover, a longstanding treatment relationship provides some assurance that the opinion has been formed for purposes of treatment and not simply to facilitate the obtaining of benefits.

> A physician's opinion is therefore not entitled to controlling weight on the basis of a fleeting relationship, or merely because the claimant designates the physician as her treating source.  Absent an indication that an examining physician presented "the *only* medical evidence submitted pertaining to the relevant time period," the opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a

treating physician's opinion.  *Reid v. Chater*, 71 F.3d 373, 374 (10th Cir. 1995) (emphasis added).

Doyal, 331 F.3d at 762-63.

The reasons for giving little weight to the opinion of the treating physician must be supported by substantial evidence, Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992), and must be clearly articulated.  Phillips, 357 F.3d at 1241.  "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error."  MacGregor, 786 F.2d at 1053.

The ALJ may discount a treating physician's opinion report regarding an inability to work if it is unsupported by objective medical evidence and is wholly conclusory.  Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991).  Stated somewhat differently, the ALJ may discount the treating physician's opinion if good cause exists to do so.  Hillsman v. Bowen, 804 F. 2d 1179, 1181 (11th Cir. 1986).  Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supports a contrary finding," the opinion is "conclusory" or "so brief and conclusory that it lacks persuasive weight," the opinion is "inconsistent with [the treating physician's own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence."  Lewis, 125 F.3d at 1440; Edwards, 937 F.2d at 583 (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)).  Further, where a treating physician has merely made conclusory statements, the ALJ may afford them such weight to the extent they are supported by clinical or laboratory findings and are consistent with other evidence as to a claimant's impairments.  Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).

Plaintiff bears the burden of proving that he is disabled, and consequently, is responsible for producing evidence in support of his claim.  *See* 20 C.F.R. § 404.1512(a); Moore v. Barnhart, 405 F.3d at 1211.  On the other hand, an ALJ has a clear duty to fully and fairly develop the administrative record.  Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995); 20 C.F.R. § 404.1512(d).  The question here is whether there are "the kinds of gaps in the evidence necessary to demonstrate prejudice" to Plaintiff.  Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997).

## IV.  The Evidence

### A.  The ALJ's Consideration of the Evidence

Plaintiff accepts the ALJ's statement of the testimony and the other evidence set forth in the decision, except as otherwise noted by Plaintiff.  Doc. 18 at 3.  The ALJ determined Plaintiff's RFC and that Plaintiff is capable of performing past relevant work.  R. 20, 22.  As a result, the ALJ's findings are set forth below.

> The claimant has alleged experiencing back pain which is not constant, but periodically flares up.  As a result, he said that he has difficulty tending to his personal needs (Ex. 9E3).  Nevertheless, prior to his recent incarceration, he was living alone with only periodic help from a friend (Ex. 6E3, 13E3).  He also alleged experiencing diabetes, which resulted in blurry vision, but he said that he was still able to drive, shop for groceries, lift 15 lbs. and go for walks at the park in spite of his impairments (Ex. 6E7-8).  Specifically, he said that he could walk ¼ mile (Ex. 6E8).  He denied ever undergoing any surgery for his back issues.  He also denied receiving any therapy for his back in the previous twenty years.

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

> Turning to the medical evidence, the objective finings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and

limitations.  In April 2009, the claimant sought emergency treatment for his diabetes mellitus, which had resulted in an elevated glucose level of 314 (Ex. 1F1).  However, at that time, he admitted that he was non-compliant in taking his diabetes medications (Ex. 1F1).  With treatment, this condition improved and he reported feeling better (Ex. 1F7).  He returned to the ER in June 2010 with complaints of blurry vision and suspected elevated blood sugar, but he left the hospital against medical advice before he could be fully evaluated (Ex. 2F1-2).

When Abdul Sofi, M.D., examined the claimant in January 2011, he noted that the claimant had hypertrophic spurring and degenerative changes in his low back resulting in limited flexion and extension of his lumbar spine (Ex. 7F2).  He also had some paraspinal muscle spasms with numbness in his lower extremities, but he retained 5/5 power in all his extremities with a normal gait (Ex. 7F2).  He also had entirely normal range of motion measurements throughout the remainder of his body (Ex. 7F3).  At that time, his blood sugar levels were under control [R. 381-85].

In March 2011, Robert Steele, M.D., completed a physical residual functional capacity assessment wherein he opined that the claimant was capable of performing work at the light exertional level, but could only frequently balance, stoop, kneel, crouch, crawl and climb ramps and stairs, and could never climb ladders, ropes or scaffolds (Ex. 9F).  Although the undersigned finds that the claimant is more limited than as determined by Dr. Steele, his opinion is nevertheless afforded significant weight to the extent that it is consistent with the above residual functional capacity [R. 390-97].

As for the issue of the claimant's credibility, the undersigned notes that his statements are internally inconsistent, a finding which tends to suggest that his allegations of disabling symptoms are less than credible.  The claimant has acknowledged experiencing disabling symptoms, but denied taking his medications as prescribed (Ex. 3F1, 3F13, 6F6).  He said that his most recent employment ended in May 2009 for reasons unrelated to his health problems (Ex. 2E2).  However, he testified that his former employer had contacted him with an offer of reemployment, he would have returned in spite of his impairments.

In sum, the above residual functional capacity assessment is supported by the medical evidence of record and by the opinion of Dr. Steele.

R. 21-22.

### B.  The Hearing--Plaintiff's and the Vocational Expert's Testimony

The ALJ referred to pre-hearing statements made by Plaintiff among the other evidence considered.  The ALJ referred to Plaintiff's hearing testimony in passing.  *See*, *e.g.*, R. 20 (referring to Plaintiff's gallbladder surgery); R. 22 (Plaintiff testifying that his employer contacted him regarding an offer of employment).

During the hearing, the ALJ inquired of Plaintiff.  R. 31-43.  Plaintiff was 55 years of age at the time of the hearing.  R. 36, 111.  He received a GED.  R. 36.  Plaintiff's attorney withdrew from representation several months prior to the hearing and he was not represented at the hearing.  Plaintiff was incarcerated at the time of the hearing and appeared by telephone, although he waived, in writing, his right to be physically present for the hearing.  R. 30-31, 111-12, 120.

Plaintiff had been incarcerated since July 14, 2012, for violating his probation and he expected to be released in October 2012.  R. 31-32; *but see* R. 111 (current release date subject to change-May 22, 2013); 112 (incarcerated-Sept. 28, 2011).  Plaintiff had been convicted of two crimes and originally spent approximately seven years in prison.  R. 32-33, 112.  He received perhaps three months of treatment, including medication, mostly for depression.  R. 32.  He was given the medication at night and it caused him to be lethargic and to sleep which caused him a problem when officials made their "master roster count" at night.  He asked to receive the medication at another time, but it was denied so he stopped taking the medication.  *Id*.  He also received mental therapy for five and one-half years through the ITM DOC program in Gainesville after he was released from prison based on the original sentence.  He went one day a week for five hours.  R. 32-33.

In 2004, Plaintiff worked for Tom's Foods as a machine operator (bagging of snack foods such as potato chips).  R. 37; *see* R. 140-46 (employment history).  He was standing when operating the machine with hand controls, but did not use foot controls. *Id.*  He did not lift or carry anything heavy--about 15 pounds maximum.  R. 37-38.  He did not know if he could do this job at present.  R. 38.

Plaintiff had been out of prison for seven and one-half years before going back to prison in 2012.  R. 34; *but see* R. 111.  During the interval, Plaintiff was employed in construction as "a laborer, a painter."  *Id.*  He started off building scaffolds that involved a lot of climbing, stooping, and working in confined spaces.  R. 37.  He was laid off in May 2009 and was not called back into service.  R. 35; *see* R. 139 (no meaningful employment in 2009 and thereafter).  While he was working, he had an injury--"pulled something in [his] back, [his] spine or whatever.  [He] always had a . . . bulging disc in [his] spine."  *Id.*  He would have returned to work if called notwithstanding his injury.  *Id.* He had been getting slower in his work "and that probably contributed to, to them not really calling [him] back.  They could see that [he] was hurting."  *Id.*

If released in October 2012, Plaintiff was uncertain of his intentions regarding work.  He had nowhere to go and was without family support.  R. 36.  While re-incarcerated in 2012, he requested treatment for his physical problems, but has not received treatment.  R. 39.  He recovered from gallbladder surgery.  *Id.*

Plaintiff stated that his main problem is with the curvature of his spine.  "It's, it's not constant, but every now and then, it will flare up and leave [him] in (INAUDIBLE)." R. 39.  He never had surgery on his back, only physical therapy in 1993 when he was working with BCI International.  R. 40.  He has diabetes and is taking oral medications,

and insulin that was started in approximately 2011.  *Id.*  His diabetes is under control, but it depends on his diet.  *Id.*  Other than as reported above, Plaintiff did not identify any other problems that prevented him from work.  R. 41.

The vocational expert identified Plaintiff's prior work, but focused on Plaintiff's work as a production worker and as Plaintiff described, as an automatic packer DOT # 920.685-082, light exertional level with a SVP of 2, which is unskilled under the DOT and as performed.  R. 44-45.  The vocational expert, responding to a hypothetical question from the ALJ, opined that Plaintiff was capable of performing work as an automatic packer.  R. 44-46.

### C.  Post-decision Submissions

On July 14, 2012, and after the ALJ rendered in his decision, Plaintiff submitted additional evidence to the Appeals Council.  R. 50-60, 227-31, 401-14.  This evidence included medical records from the Florida DOC dated September 28, 2011, through January 10, 2012 and a list of medications dated October 29, 2011, through July 22, 2012.  R. 401-14.  The Appeals Council referred to this evidence.  R. 2.  There is a health slip/pass issued by D. Gaxiola, M.D., the Chief Health Officer at the penal institution, stating that Plaintiff is to have no prolonged standing for more than 30 minutes from November 28, 2011, through December 28, 2011.  R. 57, 410.  Plaintiff was provided with ibuprofen and Bengay on November 28, 2011.  R. 55, 411.  There are several other passes, requests for sick call, referrals to the mental health clinic, and prescriptions for medications.  R. 55-60, 401-14.

## V.  Legal Analysis

Plaintiff argues that the ALJ erred by failing to fully develop the record and failing

to give appropriate consideration to an opinion rendered by Plaintiff's treating physician.

Doc. 18 at 5-7.  Plaintiff is also critical of the ALJ's lack of substantive inquiry of him

during the hearing regarding his ability to sit, stand, walk, lift, or carry.  Doc. 18 at 6.

Plaintiff suggests that while incarcerated, Dr. Gaxiola was Plaintiff's treating physician

who, as noted above, provided one note limiting Plaintiff to standing for more than 30

minutes from November 28, 2011, through December 28, 2011, R. 410.  Doc. 18 at 7.

Plaintiff was provided with ibuprofen and Bengay on November 28, 2011.  R. 55, 411.

> Generally, a claimant is allowed to present new evidence at each stage of
> this administrative process.  See 20 C.F.R. §§ 404.900(b), 416.1470(b); Ingram
> v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1261 (11th Cir. 2007).  The
> Appeals Council has the discretion not to review the ALJ's denial of benefits.
> 20 C.F.R. §§ 404.970(b), 416.1470(b).  However, the Appeals Council must
> consider "new and material evidence" that "relates to the period on or before the
> date of the [ALJ] hearing decision" and must review the case "if the [ALJ's]
> action, findings, or conclusion is contrary to the weight of the evidence currently
> of record."  Id.  The new evidence is material, and thus warrants a remand, if
> "there is a reasonable possibility that the new evidence would change the
> administrative outcome."  Hyde v. Bowen, 823 F.2d 456, 459 (11th Cir. 1987).

Flowers v. Comm'r of Soc. Sec., 441 F. App'x 735, 745 (11th Cir. 2011) (unpublished).

The Flowers court also stated that "[w]hen a claimant presents new evidence, and the

Appeals Council denies review, the Appeals Council must show in its written denial that

it has adequately evaluated the new evidence," citing Epps v. Harris, 624 F.2d 1267,

1273 (5th Cir. 1980).  Flowers, 441 F. App'x at 745.  The court further stated that "[i]f the

Appeals Council merely 'perfunctorily adhere[s]' to the ALJ's decision, the

Commissioner's findings are not supported by substantial evidence and we must

remand 'for a determination of [the claimant's] disability eligibility reached on the total

record.'"  *Id.*  The court concluded that the Appeals Council did not adequately consider

the claimant's new evidence.  *Id.*  The court, however, went forward and addressed

whether there was a reasonable possibility that the claimant's new evidence would

change the ALJ's decision.  *Id.*  (The "reasonable possibility" standard is derived from

Hyde v. Bowen, 823 F.2d at 459.)  Here, the Appeals Council considered the medical

records from DOC (Exhibit 11F, R. 401-10), Plaintiff's list of medications (Exhibit 12F,

R. 411-14), and Plaintiff's written request to the Appeals Council to review the ALJ's

decision.  R. 1-2, 50-60, 227-31.

Dr. Gaxiola's note can be construed to be a "medical opinion" as a "medical

source."  *See* 20 C.F.R. § 404.1527(a)(2).  ("Medical opinions are statements from

physicians and psychologists . . . [that] reflect judgment about the nature and severity of

[the claimant's] impairments."  20 C.F.R. § 404.1527(a)(2).)  There is no substantial

evidence, however, that Dr. Gaxiola provided any other medical services to Plaintiff,

other than to contemporaneously prescribe ibuprofen for back pain and Bengay as a

muscle rub.  R. 411.

Assuming that Dr. Gaxiola is a treating physician, agency regulations are clear

that the "longer a treating source has treated [the claimant] and the more times [the

claimant] have been seen by the treating source, the more weight we will give to the

source's medical opinion."  20 C.F.R. § 404.1527(c)(2)(i).  "When the treating source

has seen [the claimant] a number of times and long enough to have obtained a

longitudinal picture of [the claimant's] impairment, we will give the source's opinion more

weight than we would give it if it were from a nontreating source."  *Id.*  Dr. Gaxiola did

not provide the Appeals Council with "a detailed longitudinal picture of [Plaintiff's]

medical impairment(s)" such that it brought "a unique perspective to the medical evidence that cannot be obtained from reports the objective medical findings alone or from reports of individualized examinations, such as consultative examinations or brief hospitalizations."  20 C.F.R. § 404.1527(c)(2).  Dr. Gaxiola's rather brief relationship with Plaintiff did not merit giving great weight to his opinion by the Appeals Council.

Also, this note does not outweigh the evidence before the ALJ.  For example, a lumbar x-ray on November 30, 2010, showed a stent in the common bile duct, minimal hypertrophic spurring, and no other abnormalities.  R. 365.  Office visits at DMH family practice in November and December 2010, do not document any significant limitations. R. 367-73.  In January 2011, Plaintiff was examined by consultative examiner Dr. Sofi. Plaintiff reported

> that he used to be a construction worker and cannot do that kind of job because his back hurts all the time and the pain gets worse when he has to climb or bend for a long period of time.  He cannot lift anything heavy.  Patient never carried a job other than this before.  He also said that he is diabetic although his sugars are now better controlled than before.

R. 381.  Dr. Sofi determined that Plaintiff had back pain radiating into his lower extremities with some numbness; he had no gait problem, no edema, cyanosis or clubbing; pulses were felt in all four extremities; Plaintiff's mobility of all extremities was within the normal range; paraspinal muscle spasm was mostly on the right side in the LS spine with some tenderness; and there was no swelling.  Although movements were limited, Plaintiff was awake and oriented times three; CN was intact; he had grade five power below his low extremities with normal gait and hand grip was five with normal dexterity; a negative Romberg and DTR's were present.  R. 381-82.  Plaintiff's range of motion in all areas tested was normal except in the lumbar spine--forward flexion and

extension.  R. 383-85.  Dr. Sofi assessed that Plaintiff had "low back pain and the x-ray showed some hypertrophic spurring and degenerative changes.  Clinically he has limited mobility of low back and that probably prevents him from doing the job he used to do."  R. 382.

State agency physician, Dr. Steele, opined that Plaintiff could perform light work and did not have any significant limitations.  R. 390-97.  The ALJ felt that Plaintiff was more limited than as determined by Dr. Steele, but his opinion was otherwise consistent with the ALJ's RFC assessment.  R. 21-22; *see* 20 C.F.R. § 404.1527(e) (providing for consideration of opinions of medical and psychological consultants and other non-examining physicians and psychologists).

The only job Plaintiff reported to Dr. Sofi was that of a construction worker. R. 381.  During the hearing, the vocational expert identified this job as "very heavy." R. 45; *see also* R. 22.  The vocational expert opined that Plaintiff was capable of performing his past relevant work as an automatic packer, a light job with an SVP of 2, not a construction worker, R. 45-46, and the ALJ agreed.  R. 22.

This Court has reviewed the entire record and conducted a meaningful review of the new evidence based on the information contained in the ALJ's decision.  The new evidence did not show, however, that Plaintiff was incapable of substantial gainful activity for a period of twelve months or more.  *See generally* Poulson v. Astrue, No. 8:06-CV-1670-T-MAP, 2008 WL 179264, at *3 (M.D. Fla. Jan. 17, 2008).[6]  Also, there

---

[6]  This is not a case where the evidence submitted to the Appeals Council was material to the extent it offered an objective medical explanation for previously unexplained subjective complaints of pain and inability to work over an identified length of time.  *See* Hyde v. Bowen, 823 F.2d at 459.

was no reasonable possibility that the claimant's new evidence would have changed the ALJ's decision.  *See* Hyde v. Bowen, 823 F.2d at 459.

Further, the ALJ was not required to further develop the record before reaching his conclusion that Plaintiff was less impaired than he claimed.  For example, "[u]nder the social security regulations, the ALJ may order additional consultative examinations if the medical evidence submitted by the claimant does not provide enough information about an impairment to determine whether the claimant is disabled."  Salazar v. Comm'r of Soc. Sec., 372 F. App'x 64, 67 (11th Cir. 2010) (unpublished) (citing 20 C.F.R. § 416.917).  But the ALJ "is not required to order additional examinations if the evidence in the record is sufficient to allow him to make an informed decision."  *Id.* (citing Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1269 (11th Cir. 2007)).

Aside from arguing that the ALJ's inquiry of Plaintiff during the hearing was less than informative, doc. 18 at 6-7, Plaintiff does not point to specific evidence the ALJ overlooked.  *See* Davis v. Jones, 506 F.3d 1325, 1330 n.8 (11th Cir. 2007) (holding that failing to develop argument in the briefs abandons that issue).  Substantial evidence supports the ALJ's determination that Plaintiff is not disabled and no further development of the record is required.  On this record, there are not the kinds "of gaps in the evidence necessary to demonstrate prejudice" to Plaintiff.  Graham v. Apfel, 129 F.3d at 1422.

## VI. Conclusion

Considering the record as a whole, the findings of the ALJ are based upon substantial evidence in the record and the ALJ correctly applied the law.  Accordingly, it

is respectfully recommended that the decision of the Commissioner to deny Plaintiff's

application for Social Security benefits be **AFFIRMED.**

       **IN CHAMBERS** at Tallahassee, Florida, on July 1, 2014.


                     **s/ Charles A. Stampelos**
                     **CHARLES A. STAMPELOS**
                     **UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**